UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

                                MEMORANDUM & ORDER
            Plaintiff,             20-CV-3683 (JS)(JMW)

     -against-

JESSICA PAYNE, et al.,

                Defendants.
--------------------------------X
APPEARANCES
For Cross-Claimant   Jessica A. Payne, Pro Se
Jessica Payne:       2625 Alcatraz Avenue
                   #103
                   Berkeley, California  94705

For Cross-Defendant David Schachter, Esq.
Erufadica Kema:      Law Offices of Schachter, P.C.
                   74-09 37th Avenue
                   Jackson Heights, New York  11372

SEYBERT, District Judge:

       Jessica A. Payne ("Payne") moves pursuant to Rule 56 of

the Federal Rules of Civil Procedure ("Rule") seeking summary

judgment (hereafter, the "Motion") (ECF No. 79),[1] against Erufadica

Kema ("Kema").  For the reasons that follow, Payne's Motion is

GRANTED.

_____

[1] At the December 14, 2023 Motion Hearing (the "December Hearing"),
the parties were put on notice that the Court could construe
Payne's pre-motion conference letter, the parties' 56.1
statements, and any argument made on the record as the motion
itself (see Dec. 13, 2023 Elec. Order Scheduling Proceeding.)
Thus, in its discretion, the Court does so, construing Payne's
pre-motion conference request as the motion itself.  Going
forwards, the Court refers to the pre-motion conference request as
the "Motion."

## FACTUAL BACKGROUND

### I.  Materials Considered

In connection with Payne's Motion, the Court has considered: (1) the Motion; (2) Kema's Opposition to the Motion (ECF No. 82); (3) Payne's Rule 56.1 Statement (Payne's 56.1 Stmt., ECF No. 86); (4) Kema's Rule 56.1 Counterstatement with additional facts (Kema's 56.1 Counterstmt., ECF No. 88); (5) Payne's Rule 56.1 Counterstatement (Payne's 56.1 Counterstmt., ECF No. 89); and Kema's December 27 supplemental letter addressing standing (Am. Standing Letter, ECF No. 95). Additionally, at the December Hearing, the Court afforded both parties an opportunity to expand upon their arguments in support of, and in opposition to, summary judgment.[2]

---

[2] The Court finds the legal arguments: (1) contained in the parties' Motion and Opposition; (2) contained in Kema's Amended Standing Letter; and (3) made on the record at the December Hearing, in conjunction with (4) the parties' Rule 56.1 statements and counterstatements, sufficiently preserves the losing party's position for purposes of appeal. The Court's assessment is buttressed by the fact that, after affording Kema an additional opportunity to address, in writing, Payne's standing arguments, Kema's Standing Letter largely consisted of arguments copied and pasted from her Opposition, which failed to specifically rebut the standing issues raised by Payne. Cf. In re Best Payphones, Inc., 450 F. App'x 8, 15 (2d Cir. 2011) (summary order) (affirming district court's judgment because the district court did not abuse its discretion in treating a pre-motion letter as the dispositive motion when the losing party "had the opportunity to make the arguments necessary to preserve its [position] for appellate review" and "ha[d] not pointed to any additional argument it would have made had it filed full motion papers").

Unless otherwise stated, a standalone citation to a Rule 56.1 Statement or Counterstatement denotes that either the parties agree, or the Court has determined, the underlying factual allegation is undisputed. Further, citation to a party's Rule 56.1 Statement or Counterstatement incorporates by reference the document(s) cited therein. The Court deems true undisputed facts averred to in a party's Rule 56.1 statement and to which the opposing party cites no admissible evidence in rebuttal. See Steward v. Fashion Inst. Of Tech., No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be specifically controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything.") "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]." McFarlance v. Harry's

3

Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting Risco v. McHugh, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).  Moreover, to the extent any party responds she "lacks information sufficient to form a belief as to the truth of" any statement which the opposing party has supported with citations to the record, the Court deems such statement admitted.  See Ezagui v. City of N.Y., 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (deeming statements in party's 56.1 statement admitted where opposing party responded with assertions that it denied knowledge and information sufficient to form a belief as to the truth of the allegations); AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06-CV-2142, 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) ("A nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information' in part because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them." (quoting Stepheny v. Brooklyn Hebrew Sch. for Special Child., 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005) (internal quotations omitted))).

II.   Facts

    A. The Parties and the Alliance Account

        Giselle Bollmann (hereafter, "Bollmann") "was the named owner of a life insurance account" (hereafter, the "Alliance Account") "opened and funded by Plaintiff Prudential Insurance Company of America" (hereafter, "Prudential") (Payne 56.1 Stmt. ¶ 1.)   Through an Information Request Form, in the event of her death, Bollmann could designate beneficiaries who would receive any remaining balance in the Alliance Account.   (Payne 56.1 Stmt. ¶ 2.)   The Information Request Form states that if Bollmann did "not designate any beneficiaries, or if all beneficiaries predecease[d] [her], any balance remaining [would] be paid to [Bollmann's] estate."   (Information Request Forms, ECF Nos. 1-2, 1-3, 1-4, Exs. B-D, attached to Prudential Complaint.)

        Between September 2010 and May 2016, Bollmann "made various designations and changes to the beneficiaries of her Alliance Account."   (Payne 56.1 Stmt. ¶ 2.)   The first designation, made in September 2010, named "two of Ms. Bollmann's sisters-in-law, Danyula Bollman and Dorothy Kema, and a cousin-in-law, Sonya Mueller," as primary beneficiaries.   (Id. ¶ 3(a).)   Then, in May 2014, Bollman designated Payne as a secondary beneficiary to the Alliance Account.[3]   (Id. ¶ 3(d).)   However, in July 2014, Payne

---

[3] Between September 2010 and May 2014 there were two intervening changes to the beneficiaries of the Alliance Account (see Payne

was named a primary beneficiary of the Alliance Account, together with Sabina Assmus, and Kirsten Assmus.  (<u>Id.</u> ¶ 3(e).)  The final beneficiary designation made by Bollmann, in May 2016, named Sabine Assmus, and Jessica Payne as co-primary beneficiaries to the Alliance Account. (<u>Id.</u> ¶ 3(f).)  Each beneficiary was entitled to 50% of the proceeds.  (<u>Id.</u>)  In that designation, Bollmann also named Kirsten Assmus and Paul Engola as secondary beneficiaries to the Alliance Account.  (<u>Id.</u>)

Payne is Bollmann's first cousin; the two first met "in or around 2005 at a cousin's Christmas party." (<u>Id.</u> ¶ 4.)  After the death of Payne's father in 2013, Payne's and Bollmann's relationship grew closer "as they attended salsa and flamenco dance classes together."  (<u>Id.</u> ¶ 7.)  On average, when Bollmann was alive, Bollmann and Payne communicated with each other on a weekly basis.  (<u>Id.</u> ¶ 8.)  Additionally, when Payne was in New York, the two would frequently dine or shop together.  (<u>Id.</u> ¶ 9.)  Bollmann and Payne also traveled together internationally, numerous times, "including to Hamburg, Germany in or around 2014, Frankfurt and Hong Kong in or around 2016, and Scotland in 2017 and 2018." (<u>Id.</u> ¶ 10.)  Payne did not have any conversations with Bollmann about

---

56.1 Stmt. ¶¶ 3(b)-(c)).  Neither of these intervening changes named Kema as a beneficiary (<u>id.</u>)

the Alliance Account or Bollmann's designation of beneficiaries to same.  (Id. ¶ 11.)

Kema is Bollmann's half-sister.  (Id. ¶ 12.)  Despite periodically listing other siblings as beneficiaries to the Alliance Account, Kema has never been a listed beneficiary.  (Id. ¶¶ 12-13.)  Kema does not know why Bollmann never listed her as a beneficiary.  (Id. ¶ 40.)  Regarding the extent of her contacts with Bollmann, Kema testified she could not recall the nature and frequency of her contact, but that the two contacted each other "many times."  (Id. ¶ 38.)  When asked, Kema was unable to provide details "about . . . Bollmann's handling of her own finances and daily habits after the death of [Bollmann's] husband", and further testified such issues would "be brought up by the appropriate experts in a court of law."  (Id. ¶ 36.)

B. Bollmann's Alleged Dementia and Death

Kema lacked personal knowledge concerning Bollmann's mental competency and capabilities or any of Bollman's medical treatments or examinations.  (Id. ¶ 42.)  Similarly, Kema did not have any personal knowledge of, nor could point to any evidence that, Bollmann suffered from dementia or had received a diagnosis of dementia.  (Id. ¶ 44.)  When asked why she believed Bollmann had suffered from dementia, Kema testified that her family "has an extensive history with dementia."  (Id. ¶ 45.)  When asked to expound upon the dementia symptoms Kema observed in Bollmann,

Kema's response was that her family "had a large extensive history of dementia with many different symptoms." (Id. ¶ 46.) When pressed with specific questions about Bollmann's mental capacity and her daily habits, Kema was unable to provide specific details. (Id. ¶ 47.)

Relatedly, "[d]uring her first deposition, . . . Kema was asked if all documents she planned to use in the case had been provided;" Kema responded in the affirmative. (Id. ¶ 50.) Since Kema continuously referred to "notes" she needed to review to answer certain questions at her second deposition, Payne "again requested, on the record, that . . . Kema produce any and all documents" showing Bollmann suffered from dementia "and any documentation regarding [Bollmann's] health that pertained to the case." (Id. ¶ 51.) In response, Kema provided: (1) a death certificate for Bollmann's mother, Rosalie Omodi-Engola ("Rosalie"); (2) two medication lists for Rosalie; and (3) the death certificate for Bollmann's uncle, Williams Stephens. (Id. ¶ 52.) Williams Stephens' Death Certificate indicates Dementia was a significant contributing condition to his death but not the underlying cause. (See Williams Stephens' Death Certificate, ECF No. 86-15, Ex. 15, attached to Payne 56.1 Stmt.) Rosalie's Death Certificate makes no mention of dementia; rather, it states the immediate cause of death was cardiopulmonary arrest due to heart disease and that diabetes was a significant condition contributing

8

to death.   (See Rosalie Omodi-Engola's Death Certificate, ECF No. 86-15, Ex. 15, attached to Payne 56.1 Stmt.)

On or around April 18, 2018, Bollmann died intestate. (Id. ¶ 14.)  Bollmann was survived by her biological father, Phillip E. Payne ("Phillip") (see Phillip Assignment, Ex. G, ECF No. 88-7, attached to Kema Counterstmt).   Bollmann's death certificate lists her cause of death as "undetermined" and the manner of her death as "natural."  (Id.)  It makes no mention of dementia, although autopsy findings were not available to complete the cause of death.  (Id.; see also Kema Counterstmt. ¶ 14.)  "On or around May 16, 2018, . . . Kema wrote a letter to Prudential requesting that Prudential not release the funds of the Alliance Account to any listed beneficiary, alleging," inter alia, that the designation was made as the result of fraud and/or undue influence. (Id. ¶ 15.)  On June 19, 2018, Payne completed and returned a claim form, which was sent to her by Prudential, asserting her claim for the account balance.  (Id. ¶ 16.)

On or about July 3, 2018, the State of Connecticut Probate Court (the "Probate Court") "granted administration of the estate of . . . Bollmann to . . . Payne."   (Id. ¶ 17.)   As Bollmann's surviving biological parent, Phillip "acknowledge[d], authorize[d] and assign[ed]" his niece, Payne, "to make all necessary arrangements" for Bollmann; Phillip acknowledged Bollmann had previously assigned Payne "Power of Attorney and

Executor to be in charge of" Bollmann's "affairs during her living incapacitation and death." (See Phillip Assignment.) On August 10, 2018, through Counsel, Kema submitted another letter to Prudential representing that she was preparing to file Letters of Administration for Bollmann's estate and that there was a hearing scheduled in the Probate Court pertaining to Kema's objections to Payne's application for Letters of Administration. (See Payne 56.1 Stmt. ¶ 21; see also Aug. 10, 2018 Letter to Prudential, Ex. I, ECF No. 1-9, attached to Prudential Complaint.) Kema further represented she had located a doctor who could testify to Bollmann's "dementia at the time of the beneficiary designation." (Aug. 10, 2018 Letter to Prudential.)

On August 28, 2018, the Probate Court held a hearing in connection with the administration of the Bollmann estate. (Payne 56.1 Stmt. ¶ 19.) Kema represents, but cites no evidence confirming, that "[t]he purpose of the August 28, 2018 hearing . . . was to discuss the merits of . . . Payne's petition and whether she was entitled to be administrator" of Bollmann's estate on behalf of Phillip, who Kema contends abandoned Bollmann and was therefore an "estranged father." (See Kema Counterstmt. ¶ 18.) As part of her efforts to challenge Payne's appointment as administrator, Kema "submitted to the Connecticut Probate Court a

series of affidavits[4] signed between May 2018 and July 2018 from numerous individuals." (Payne 56.1 Stmt. ¶ 18.) The findings of the Probate Court are not part of the record; however, it is undisputed that, after the hearing, and continuing to the present, Payne remains administrator of Bollmann's estate. (Id. ¶ 19; see also Dec. Hr'g Tr. 6:16-21.)

---

4 While the Court declines to address the merits of Kema's claims (see infra Part.II), had it done so, the "affidavits," specifically those submitted by Dr. Gloria Lindsey Alibaruho ("Alibaruho"), would have been disregarded. (See First Alibaruho Affidavit, Ex. 6, ECF No. 86-6, attached to Payne 56.1 Stmt.; Second Alibaruho Affidavit, Ex. 10, ECF No. 86-10, attached to Payne 56.1 Stmt.) Neither of Alibaruho's purported "affidavits" is presented in admissible form. Indeed, there is no indication that the statements contained in the "affidavits" were made under penalty of perjury; likewise, there is no jurat or "sworn to me before" language on the notary stamps affixed to Alibaruho's statements. Courts in this Circuit decline to consider such unsworn statements at the summary judgment stage.

> By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury. . . . To be considered in connection with a summary judgment motion, the rule requires that submissions in the form of statements be prepared as affidavits. . . . Failure to submit materials in this form will cause the submission to be disregarded by the court in its consideration of the pending motion.

DeMars v. O'Flynn, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003) (quoting 11 MOORE'S FEDERAL PRACTICE, § 56.14(1)(b) (Matthew Bender 3d ed.)); see also Persaud v. URS Midwest, Inc., No. 06-CV-3119, 2007 WL 4556908, at *6 (E.D.N.Y. Dec. 21, 2007) (noting that medical reports were "not presented in an admissible form" because "[t]here is no jurat, or 'sworn to me before' language, on the notary stamp affixed to the reports"); cf. Flowers v. Abex Corp., 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984) ("Merely notarizing the signature does not transform a letter into an affidavit.").

PROCEDURAL HISTORY

On August 13, 2020, Prudential brought the instant interpleader action, asking the Court to determine to whom the benefits of the Alliance Account should be paid. (Id. ¶ 24.) In response, Kema alleged: first, the designations made by Bollman were made under duress, undue influence, and/or with a lack of capacity; and, second, Payne had been improperly or fraudulently appointed administrator of Bollmann's estate since Payne had not notified "all necessary parties" of the administration proceedings. (Id. ¶ 25; see also Kema Answer, ECF No. 10.) Kema requested "judgment invalidating the beneficiary designations made by . . . Bollmann on or about July 29, 2014 and May 14, 2016" and settlement and adjustment of the claims in her favor. (Kema Answer at 2.) On December 28, 2020, Payne filed her Answer to Prudential's Complaint (see Payne Answer, ECF No. 15), which she amended on January 19, 2021 (see Payne Am. Answer, ECF No. 22.) Payne argued Kema did not have standing to challenge the beneficiary designations because she was never a listed beneficiary and is not an heir to Bollmann's estate; Payne averred the proper heirs were properly notified as to the estate's administration. (Id. ¶ 26; see also Payne Answer, ECF No. 22.) Further, Payne "cross-claimed against . . . Kema arguing that the probate matter was barred by res judicata, as the Connecticut Probate Court had rejected . . . Kema's claims[.]" (Id.)

On March 18, 2022, Payne filed a pre-motion conference request seeking leave to file a summary judgment motion. Kema opposed the pre-motion conference request. On July 1, 2022, the Court directed the parties to file their respective Rule 56.1 statements, and counterstatements (see July 1, 2022 Min. Entry, ECF No. 84), which they did. On October 4, 2023, the Court scheduled the December Hearing and put the parties on notice that, at the Court's discretion, it could construe the parties' pre-motion submissions, 56.1 statements, and arguments made on the record as the summary judgment motion itself. (See Oct. 4, 2023 Elec. Order Scheduling Proceeding.) During the December Hearing, in addition to expounding upon the arguments made in her pre-motion submissions, Payne reiterated her standing arguments which were previously raised in her Answer and Amended Answer. (See Dec. Hr'g Tr. 4:1-8:14.) The Court permitted Kema the opportunity to oppose Payne's standing argument; however, during the hearing, the Court determined it required further briefing on Kema's standing. (See Dec. Hr'g Tr. 13:19-15:17.) As such, the Court adjourned the December Hearing to allow the filing of supplemental briefing detailing the basis for Kema's standing to bring her claims notwithstanding she was never a listed beneficiary or Bollmann's heir. (See Dec. Hr'g Tr. 16:17-25.) A status conference was scheduled in this case for February 2, 2024. (See Dec. Hr'g Tr. 23:25-24:20.) On December 27, 2023, Kema filed her

13

Standing Letter.[5] Upon reviewing Kema's Standing Letter, the Court adjourned the February 2 status conference, <u>sine die</u>, as it determined it did "not require any further filings, or arguments" to render its decision (<u>see</u> Jan. 31, 2024 Elec. Order Adjourning Proceeding.)[6]

---

[5] An Amended Standing Letter was filed the same day which was, in substance, identical to the original.

[6] The Court notes that even had it considered the merits of Kema's claims, it would have granted summary judgment to Payne. Indeed, beyond: (1) Kema's speculative statements that she observed general symptoms of dementia in Bollmann, and (2) Alibaruho's unsworn "affidavit", which the Court would have declined to consider (<u>see</u> <u>supra</u> n.4), there was no evidence in the record that Bollmann suffered from dementia or had received a diagnosis of dementia, such that, Bollmann's "mind was so affected as to render [her] wholly and absolutely incompetent to comprehend and understand the nature of the transaction." <u>See</u> <u>N.Y. Life Ins. Co. v. Brown</u>, No. 19-CV-9437, 2021 WL 325857, at *6-7 (S.D.N.Y. Feb. 1, 2021); <u>see also</u> <u>id.</u> (Applying the contract standard to determine whether decedent was mentally competent to change the beneficiaries of his life insurance policy and finding that "[u]nder the contract standard a person is presumed 'competent at the time of the performance of the challenged action and the burden of proving incompetence rests with the party asserting incapacity.'" (quoting <u>Genworth Life Ins. Co. of N.Y. v. Dwaileebe</u>, No. 12-CV-6330, 2017 WL 1046332, at *6 (W.D.N.Y. Mar. 20, 2017))).

Likewise, Kema's undue influence claim can largely be reduced to three arguments, that is: (1) Payne was given a power of attorney over Bollmann and owed her a fiduciary relationship; (2) Payne and Bollmann only knew each other for a short time; and (3) Bollmann suffered from dementia.

> Per New York state law, if a party alleges undue influence, it must show 'that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [victim] to do that which was

DISCUSSION

I.   Legal Standard

   A. Summary Judgment

      Pursuant to Rule 56(a), "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law."  Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020).  Additionally, "'[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the

---

         against his free will and desire, but which he
         was unable to refuse or too weak to resist.

Metropolitan Life Ins. Co. v. Giscombe, 19-CV-4463, 2022 WL 2467066, at *9 (E.D.N.Y. Jan. 21, 2022) (quoting Wilton Reassurance Life Co. of N.Y. v. Smith, 21-CV-5131, 2015 WL 631973, at *15 (E.D.N.Y. Feb. 13, 2015)).  Here, Kema provides no affidavit or testimony from any witness that contradicts Payne's testimony that Payne and Bollmann never discussed the Alliance Account or Bollmann's designations to same.  It is axiomatic that if Bollmann and Payne never discussed the challenged beneficiary designations Payne could not have exercised undue influence over Bollmann to force Bollmann into changing them.  Kema's undue influence claim is purely speculative, such speculatory and unsupported assertions at this stage cannot create triable issues of fact.

opposing party, summary judgment is improper." Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997). Moreover, "the court is not to make assessments of the credibility of witnesses" on a motion for summary judgment, as "[c]redibility assessments, choices between conflicting versions of events, and weighing of the evidence are matters for the jury." Id.

On a motion for summary judgment, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). Further, while the court "may consider other materials in the record," it "need consider only the cited materials" in ruling on a summary judgment motion. FED. R. CIV. P. 56(c)(3); see also Pennington v. D'Ippolito, 855 F. App'x 779, 782 (2d Cir. 2021) ("[I]n ruling on a summary judgment motion the court need consider only the cited materials in the parties' submissions." (internal citations and alterations omitted)).

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vardaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). When drawing inferences from evidence in the record in

favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).

"Once the movant has 'demonstrat[ed] the absence of a genuine issue of material fact . . . the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim.'" Pennington, 855 F. App'x at 781 (alteration in original) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). To do this, "[t]he non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" Id.

B. Standing

Article III of the Constitution extends federal courts' jurisdiction only to cases and controversies. U.S. Cᴏɴᴛ. art. III, § 2. The Supreme Court has interpreted this to mean that federal jurisdiction exists only when the plaintiff has "a personal stake in the outcome of the controversy." Warth v. Seldin, 422 U.S. 490, 498 (1975) (internal quotations omitted). To show standing, a plaintiff must demonstrate he has "suffered an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be

redressed by judicial relief." <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 423 (2021).  "For purposes of Article III standing, an 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized[ ] and (b) actual or imminent, not conjectural or hypothetical.'" <u>Lacewell v. Off. of Comptroller of Currency</u>, 999 F.3d 130, 141 (2d Cir. 2021) (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)).

II. <u>Analysis</u>

Kema asserts she has standing to challenge Bollmann's beneficiary designations because, although Kema was never a listed beneficiary, she is entitled to a distribution of Bollmann's

estate[7] pursuant to E.P.T.L. § 4.1-1.[8] (Am. Standing Letter at 4.)

Specifically, Kema contends Payne "was improperly and/or

---

[7] Kema does not address the fact that invalidation of the May 2016 designation, either on grounds of mental competency or undue influence, would not result in the proceeds of the Alliance Account automatically being paid to Bollmann's estate.  Instead, and as noted by Prudential, the invalidation of a later beneficiary designation results in the proceeds of the account being distributed in a manner consistent with the previously valid designation.  (See Prudential Complaint, ¶ 23 ("If the Court were to determine that the May 2016 designation is legally invalid, the Account Balance would be payable to Sabine Assmus, Kirsten Assmus, and Jessica Payne, in the shares stated pursuant to the immediately prior beneficiary designation." (emphasis added)).)  Consequently, by Prudential's understanding of the Alliance Account, invalidation of the May 2016 designation would result in the July 29, 2014 Information Request Form becoming the operative designation (id.)  Similarly, if both the May and July designations were invalid, then the prior May 28th, 2014 designation would become the operative designation, and so on, until either: (1) the beneficiaries in the last valid designation predeceased Bollmann; or (2) all of Bollmann's designations were found to be invalid.

[8] E.P.T.L. § 4-1.1 is New York's intestacy statute (the "Intestacy Statute"), which provides that where "property of a decedent is not disposed of by will", it is to be distributed as follows:

    If a decedent is survived by:

    (1)  A spouse and issue, fifty thousand dollars and one-half of the residual to the spouse, and the balance thereof to the issue by representation.
    (2)  A spouse and no issue, the whole to the spouse.
    (3)  Issue and no spouse, the whole to the issue, by representation.
    (4)  One or both parents, and no spouse and no issue, the whole to the surviving parent or parents. . . .
    (5)  Issue of parents, and no spouse, issue, or parent, the whole to the issue of the parents, by representation

fraudulently appointed administrator" of Bollmann's estate because Payne, "as the representative of" Bollmann's "biological father, Phillip . . . had no standing as either a proposed administrator or distributee of the decedent's estate."  (Id.)  Kema asserts Bollmann died intestate without spouse or issue.  (Id.)  In an attempt to sidestep E.P.T.L. § 4.1-1(4) (see supra n.6), Kema contends Phillip should be disqualified from inheriting Bollmann's estate because he "abandoned [Bollmann] as a parent and . . . abdicated his duties as the decedents [sic] parent."[9] (Id.)  Consequently, Kema claims, as Bollmann's surviving sibling and next in line to inherit Bollmann's estate through the Intestacy Statute, she is entitled to distribution of Bollmann's estate pursuant to E.P.T.L. § 4-1.1(5).  (Id.)

---

E.P.T.L § 4-1.1(a).

[9] E.P.T.L. § 4-1.4 concerns disqualification of parents to take intestate shares of deceased children.  In pertinent part E.P.T.L. § 4-1.4 states:

> No distributive share in the estate of a deceased child shall be allowed to a parent if the parent, while such child is under the age of twenty-one years: (1) has failed or refused to provide for the child or has abandoned such child, whether or not such child dies before having attained the age of twenty-one years, unless the parental relationship and duties are subsequently resumed and continue until the death of the child[.]

E.P.T.L. § 4-1.4(a)(1).

On paper, Payne initially raised Kema's lack of standing to challenge the beneficiary designations in her initial Answer (see Payne Answer at 6.)  Payne's standing argument was reiterated in her Amended Answer (see Payne Am. Answer at 7-8), but neither Payne, nor any other party in this case, briefed the issue as part of a motion to dismiss.[10]  Nonetheless, Payne highlighted Kema was never a beneficiary to the Alliance Account or an heir to Bollmann's estate.  (Id.)  Payne further expounded that the Probate

---

[10] To the extent Kema appears to suggest that Payne's standing argument was waived (see Am. Standing Letter at 4), the Court rejects this argument since "[t]he question of standing is not subject to waiver."  United States v. Hays, 515 U.S. 737, 742 (1995).  Rather, "[b]ecause the question of standing goes to the constitutional limitations on the judicial Power of the United States, which is limited to resolving Cases or Controversies, we are entitled at any time sua sponte to delve into the issue of standing even if [a party] do[es] not raise the issue." Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision, 16 F.4th 67, 78 (2d Cir. 2021) (quotation marks and case citation omitted) (quoting in part U.S. Const. art. III); see also Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (explaining standing "may be raised by a party, or by a court on its own initiative, at any stage in the litigation" (quoting Arbaugh v. Y & H Corp., 546 U.S. 567, 571 (2004))); cf. Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc., No. 18-CV-5831, 2020 WL 2904862, at *3 (S.D.N.Y. June 3, 2020) (denying defendants' motion to dismiss for lack of subject matter jurisdiction, but noting defendants had a "right to argue that [the plaintiff] lacks contractual standing to pursue the relief sought here in a later motion for summary judgment or bench trial"); accord Conservation L. Found., Inc. v. ExxonMobil Corp., 578 F. Supp. 3d 119, 119 (D. Mass. Dec. 22, 2021) ("[S]tanding can be raised at any time.  For example, if a motion to dismiss for lack of standing is denied, a case may nevertheless be properly dismissed for lack of standing on a motion for summary judgment or after trial." (citation omitted)).

Court had previously adjudicated Kema's administration claims.[11]
(See Dec. Hr'g Tr. 6:5-23; 18:5-6.)  Payne contended that the
Probate Court's ruling was res judicata here.  (Id.)

    At the December Hearing, Payne re-emphasized (1) her
standing arguments, and (2) her contention that Kema's arguments
were previously adjudicated during the August 28 status conference
before the Probate Court.  (Dec. Hr'g Tr. 5:18-6-23.)  Payne also
made clear that her administration of Bollmann's estate continues
to the present day.  (Id.)  Despite having the opportunity to do
so, Kema did not dispute that the Probate Court had previously
adjudicated her arguments relating to the administration of
Bollmann's estate during the August 28 Status Conference.[12]
Indeed, Kema's counsel tacitly acknowledged this was the case.
(See Dec. Hr'g Tr. 18:3-6.)

    Even accepting as true, for the purposes of arguendo,
that: (1) the challenged beneficiary designations are invalid,
either because of Bollmann's mental incompetency or due to undue

---

[11] The Court understands Payne's argument in this regard to pertain
to Kema's present claims regarding her status as heir, as well as
Phillip's rights, and the extent to which they were, or were not,
forfeited, under the Intestacy Statute.  (See Dec. Hr'g Tr. 16:23-
17:2; 18:5-6.)

[12] Kema's silence in this regard is not unique to the December
Hearing, since her Rule 56.1 Counterstatement, likewise, fails to
dispute Payne's contention that the arguments relating to the
administration of Bollmann's estate, which Kema presently raises,
were previously adjudicated by the Connecticut Probate Court.  (See
Kema 56.1 Counterstmt. ¶¶ 17-19.)

influence; (2) any remaining designation is invalid because it names beneficiaries that predeceased Bollmann; and (3) as a result, the balance of the Alliance Account should be paid to Bollmann's estate, the Court finds Kema cannot show a concrete and particularized injury for purposes of standing. See Arroyo v. PHH Mortg. Corp., No. 13-CV-2335, 2014 WL 2048384, at *5 (E.D.N.Y. May 19, 2014) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (quoting Lujan, 504 U.S. at 560)).

As an initial matter, there is no basis for Kema to argue she was injured by the challenged designations to the Alliance Account because Kema was never, at any point, a listed beneficiary with an interest in the Account. Instead, Kema's claimed injury is premised upon her belief she should be a beneficiary of Bollmann's estate. Kema contends that, as a beneficiary to the estate, she would be injured if the disputed funds are paid to Payne, and the other designated beneficiaries of the Alliance Account, because the funds should become part of Bollmann's estate. However, the Court finds the injury Kema alleges is not personal to her, but, instead, a speculative injury to Bollmann's estate. Nor is Kema able to establish standing to bring her claim on behalf of Bollmann's estate because she has not established her rights as a beneficiary to the estate. Cf. Bartone v. Podbela, No. 17-CV-

3039, 2018 WL 1033250, at *8 (E.D.N.Y. Feb. 23, 2018) (granting dismissal motion where plaintiff's alleged injury was that "the Decedent's estate was deprived of certain monies" but where plaintiff had not proven he was an estate beneficiary with standing to pursue a claim on behalf of the estate); see also Yien-Koo King v. Wang, No. 14-CV-7694, 2017 WL 2656451, at *5 (S.D.N.Y. June 20, 2017) (holding plaintiff did not have standing to bring claims on behalf of estate where subject wills remained contested and plaintiff's status as a beneficiary of the estate had not yet been determined).

"[A]bsent extraordinary circumstances," actions on behalf of an estate "may only be brought by an executor or administrator of an estate." Thea v. Kleinhandler, No. 13-CV-4895, 2014 WL 2111637, at *5 (S.D.N.Y. May 13, 2014) (citation omitted) (collecting cases). "[E]xtraordinary circumstances may be implicated where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate." Id. (quoting Lewis v. DiMaggio, 115 A.D.3d 1042, 1044 (3rd Dep't 2014) (alteration in original)). "Under those extraordinary circumstances, actions on behalf of an estate must be brought by beneficiaries or legatees." Bartone, 2018 WL 1033250, at *8 (citing Witzenburg v. Jurgens, 2007 WL 9710763, at *9 (E.D.N.Y. Mar. 1, 2007)).

24

Thus, while Payne is the Administrator of Bollman's estate, because Kema is neither a beneficiary nor a legatee of the estate, even if, arguendo, extraordinary circumstances might have existed warranting challenging Payne's administration of the estate, Kema would be ineligible to bring an action on behalf of the estate to make such a challenge. Moreover, and of significance, Kema does not dispute that the Probate Court previously adjudicated Kema's claims at the August 28 Hearing. Further, as stated by the Court at the December Hearing, the Probate Court's ruling on this issue is res judicata here. See Barash v. N. Tr. Corp., No. 07-CV-5208, 2009 WL 605182, at *7 (E.D.N.Y. Mar. 6, 2009) ("Under the doctrine of res judicata, otherwise known as claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The doctrine applies only if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." (internal quotations and citations omitted)).

Additionally, even if the Probate Court's determinations were not res judicata, this Court is without jurisdiction to: (1) declare Phillip an "estranged parent" within the meaning of

25

E.P.T.L. § 4-1.4(a)(1); (2) subsequently determine Kema is a beneficiary to Bollmann's estate pursuant to E.P.T.L. § 4-1.1; or (3) find Payne's Letters of Administration were fraudulently obtained.  Indeed, such determinations would implicate the probate exception to federal jurisdiction.[13]  See Kaufman v. Jetson Electric Bikes, LLC, No. 22-CV-3765, 2024 WL 66036, at *3 (E.D. Pa. Jan. 5, 2024) (declining to "apply the intestate law of forfeiture and hold that [biological parent] deserted [child] within the meaning of" the Pennsylvania intestate statute because, inter alia, "such a determination is barred by the probate exception"); see also id. ("Applying the intestate law of forfeiture to determine who is an heir and who is entitled to take from the estate places this matter squarely in the second probate exception by endeavoring to administer an estate." (citing Thorpe v. Borough of Thorpe, No. 3:CV-10-1317, 2013 WL 1703572, at *7

---

[13] "The probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Architectural Body Rsch. Found. v. Reversible Destiny Found., 335 F. Supp. 3d 621, 633 (S.D.N.Y. 2018) (quoting Marshall v. Marshall, 547 U.S. 293, 311-12 (2006) (emphasis added)); cf. King v. Shou-Kung Wang, 663 F. App'x 12, 13 (2d Cir. 2016) ("Post-Marshall, the probate exception is to be construed narrowly, such that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer (or invalidate the administration of) an estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court, the probate exception does not apply." (citing Leftkowitz v. Bank of N.Y., 528 F.3d 102, 105-06 (2d Cir. 2007) (emphasis added))).

(M.D. Pa. Apr. 19, 2013), <u>rev'd on other grounds</u>, 770 F.3d 255 (3d Cir. 2014))).

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that Payne's Motion for Summary Judgment (ECF No. 79) is GRANTED and Kema's claims are DISMISSED.  The Clerk of Court is directed to disburse the funds as follows:

First, in accordance with the parties' November Settlement Agreement (ECF No. 54): (1) $12,048.48 to Sabine Assmus; and (2) $12,048.48 to Kirsten Assmus.  Checks reflecting these dispersal amounts shall be mailed to the parties at their respective addresses of record, <u>to wit</u>:

```
Sabine Assmus
Meiner Str. 47b
Weinbohla 01689
Germany

Kirsten Assmus
Meiner Str. 49
Weinbohla 01689
Germany
```

Second, the remaining balance of funds deposited into the Court, including, but not limited to, any and all interest accrued on the funds, if any, to Jessica A. Payne. A check reflecting these dispersal amounts shall be mailed to Jessica A. Payne at her address of record, to wit:

          Jessica A. Payne
          2625 Alcatraz Avenue, #103
          Berkeley, California 94705


                    SO ORDERED.


                    /s/ JOANNA SEYBERT
                    Joanna Seybert, U.S.D.J.

Dated: February 20, 2024
       Central Islip, New York